EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Howard Ferrer; B/JCS Delibox; Dora García; Nelson Capote; Ismael Torres y Eneida Román<br><br>Recurridos<br><br>v.<br><br>Puerto Rico Telephone Company<br><br>Peticionaria | Certiorari<br><br>2022 TSPR 72<br><br>209 DPR \_\_\_\_ |

Número del Caso: CC-2021-154

Fecha: 8 de junio de 2022

Tribunal de Apelaciones:

    Panel Especial

Abogados de la parte peticionaria:

    Lcdo. Eliezer Aldarondo Ortiz
    Lcda. Rosa Campos Silva
    Lcdo. Eliezer Aldarondo López
    Lcdo. Néstor M. Méndez Gómez
    Lcda. María D. Trelles Hernández
    Lcdo. Christian A. Muñoz Lugo
    Lcda. María L. Montalvo Vera

Abogados de la parte recurrida:

    Lcdo. Harold Vicente
    Lcda. Ivelisse M. Ortiz Moreau
    Lcdo. Roberto Alonso Santiago
    Lcdo. José A. Andréu Fuentes

Materia: Sentencia del Tribunal con Opiniones Disidentes.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Howard Ferrer; B/JCS Delibox; Dora García; Nelson Capote; Ismael Torres y Eneida Román | *Certiorari* |
|---|---|
| Recurridos | |
| v. | CC-2021-0154 |
| Puerto Rico Telephone Company | |
| Peticionaria | |

SENTENCIA

En San Juan, Puerto Rico, a 8 de junio de 2022.

Hoy examinamos la corrección de una sentencia sumaria parcial emitida en un pleito de clase. Como detallaremos a continuación, este pleito fue bifurcado ante la agencia administrativa. Primero, se atendería la certificación de clase. Posteriormente, se examinarían los méritos de la reclamación. El descubrimiento de prueba fue limitado de igual manera.

Sin embargo, la ley aplicable sufrió enmiendas que afectaron la jurisdicción de la agencia administrativa. Así, el aspecto de la certificación de la clase fue atendido inicialmente ante la Junta Reglamentadora de Telecomunicaciones y luego el pleito fue trasladado al Tribunal de Primera Instancia.

Ya certificada la clase, y previo a continuar el descubrimiento de prueba sobre los méritos del caso, la Clase

Demandante presentó una solicitud de sentencia sumaria ante el Tribunal de Primera Instancia. La solicitud -que estaba sustentada en la prueba presentada ante la agencia administrativa para la certificación de la clase- fue acogida por el Tribunal de Primera Instancia. Mediante sentencia sumaria, el foro primario concluyó que la peticionaria "es responsable por el cobro doloso en contravención de la buena fe contractual, que le gestionó a la [C]lase Demandante por concepto de renta de equipo o CPE entre 1999-2009".[1] Dicho dictamen fue confirmado por el Tribunal de Apelaciones.

Sin embargo, como foro apelativo debemos asegurarnos de que la evidencia en los autos demuestre que el promovente tiene derecho a la sentencia sumaria. Tras examinar la totalidad de la prueba presentada para sustentar la solicitud, concluimos que esta no demuestra de forma incontrovertible el alegado incumplimiento contractual doloso del promovido. Por lo tanto, procede devolver el caso para que las partes tengan la oportunidad de completar un descubrimiento de prueba adecuado y presentar evidencia sobre los méritos de la reclamación.

I

Este pleito tuvo su génesis el 24 de febrero de 2009, cuando varios consumidores (recurridos o Clase Demandante) presentaron una *Querella de Clase* contra la Puerto Rico Telephone Company (PRTC o peticionaria) ante la otrora Junta Reglamentadora de Telecomunicaciones (Junta), hoy conocida

---

[1] Apéndice del *Certiorari*, pág. 2974.

como el Negociado de Telecomunicaciones. En la Querella alegaron que los recurridos representaban a más de 700 mil consumidores del servicio de telefonía comercial y residencial provisto por la PRTC.[2] Sostuvieron que desde el 1996 hasta el 2009 se les había cobrado mensualmente un cargo nulo, fraudulento e ilegal por concepto de renta, mantenimiento y reemplazo del equipo telefónico (*customer premises equipment* o *CPE*) que fluctuaba entre uno (1) a tres (3) dólares mensuales. Indicaron que la cantidad cobrada ilegalmente ascendía a aproximadamente $258,666,302.60;[3] que la PRTC no prestó los servicios de reparación o reemplazo de equipo y que el cargo violentaba tanto el deber de obrar de buena fe, así como la Ley Núm. 213-1996, conocida como Ley de Telecomunicaciones de Puerto Rico de 1966, 27 LPRA sec. 265 *et seq.*, por no tratarse de un cargo basado en los costos de servicios ni en los contratos entre las partes. Por lo tanto, solicitaron la devolución de las cantidades cobradas a los consumidores; costas, intereses y una suma no menor al

---

[2] El Sr. Nelson Capote, la Sra. Dora E. García, la Sra. Rosa Eneida Román Rivera, el Sr. Howard Alberto Ferrer Mejías, B/JCS Deli Box, y el Sr. Ismael Torres Otero, por sí y en representación de la clase presentaron la *Querella de Clase*. Ante la solicitud de desistimiento voluntario sin perjuicio del Sr. Nelson Capote y la Sra. Dora E. García, los recurridos presentaron una Querella de Clase Enmendada el 1 de septiembre de 2010 y fue autorizada el 22 de septiembre de 2010. Apéndice del *Certiorari*, pág. 145. La Junta Reglamentadora de Comunicaciones requirió a los recurridos que expusieran detalladamente sus alegaciones de fraude. Así las cosas, el 25 de octubre de 2010 presentaron una *Segunda* Querella de Clase Enmendada en la que se alegó que el cargo era nulo por cobrarse sin estar basado en costos y que la PRTC "no prestaba servicio alguno relacionado con la renta, mantenimiento y/o remplazo del mencionado equipo telefónico". Apéndice del *Certiorari*, págs. 148 y 158. Con esta enmienda se presentó también la declaración jurada del Sr. Tomás H. Pérez Ducy. Posteriormente, los recurridos presentaron una Tercera Querella de Clase Enmendada. Esta última no fue autorizada mediante Resolución de 1 de marzo de 2012.

[3] Apéndice del *Certiorari*, pág. 151.

veinticinco por ciento (25%) de la sentencia por concepto de honorarios de abogado.[4]

Tras varios trámites procesales, el 15 de abril de 2010, la Junta aprobó una *Resolución y Orden*, en la que autorizó limitar el descubrimiento de prueba a los asuntos relacionados con la certificación de clase. Esta determinación fue sostenida nuevamente el 19 de enero de 2011 al expresar que "[c]ualquier descubrimiento no relacionado a la certificación de clase no ha sido autorizado por este Foro".[5]

Así las cosas, las partes llevaron a cabo el descubrimiento de prueba correspondiente, y se celebró la vista evidenciaria sobre la certificación de la clase ante el Oficial Examinador designado. Los recurridos presentaron los testimonios de los querellantes, del Sr. Tomás H. Pérez Ducy (Vicepresidente de Ventas y Mercadeo de PRTC desde el 2004 al 2006) y del Sr. José Miguel Barletta (perito en contabilidad). Por su parte, la PRTC presentó el testimonio del Sr. Jeffrey A. Eisenach (perito economista). El 21 de febrero de 2013, el Oficial Examinador emitió un Informe sobre Certificación de Reclamación de Clase en el que definió la Clase Demandante como:

---

[4] Posteriormente, en la Solicitud de Sentencia Sumaria de 18 de diciembre de 2018 los recurridos indicaron que "la "[C]lase Demandante tiene derecho a que PRTC le devuelva el pago de $168,354,553.65 por cobro ilegal y fraudulento realizado por PRTC, más una cantidad igual a esa suma según lo provee la Ley de Acción de Clase por Consumidores de Bienes y Servicios, Ley Núm. 118 de 25 de junio de 1971, 32 L.P.R.A. §§ 3341-3344". Apéndice del *Certiorari*, pág. 2626.

[5] Apéndice del *Certiorari*, págs. 134 y 215.

> Toda persona natural o jurídica que: a) durante al menos un mes dentro del periodo comprendido entre los años 1999 al 2009, fue suscriptor residencial o comercial del servicio telefónico provisto por la PRTC; y b) pagó un cargo mensual fluctuante entre $1.00 y $3.00 por concepto de renta, reparación y reemplazo de equipo telefónico monolínea.[6]

El 29 de julio de 2013, la Junta notificó una resolución y acogió el Informe por voto mayoritario.[7]

Posteriormente la Ley Núm. 118-2013 enmendó la Ley de Telecomunicaciones de Puerto Rico, Ley Núm. 213-1996, *supra*, y suprimió la jurisdicción primaria y exclusiva de la Junta para dilucidar los pleitos de clase. En consecuencia, el 17 de diciembre de 2013 se ordenó el traslado del caso al Tribunal de Primera Instancia.[8]

Luego de múltiples incidentes procesales, el foro primario notificó la Minuta de la Conferencia sobre el Estado de los Procedimientos en la que se detallaba la continuación del descubrimiento de prueba sobre los méritos de la controversia y sobre la calendarización de las deposiciones.[9] Así las cosas, y previo a la continuación del descubrimiento de prueba, los recurridos presentaron una Solicitud de Sentencia Sumaria el 18 de diciembre de 2018. En esencia, sostuvieron que de la prueba documental presentada y admitida

---

[6] Apéndice del *Certiorari*, pág. 1071.

[7] El dictamen sobre la certificación de la clase fue impugnado por la Puerto Rico Telephone Company (PRTC) ante el Tribunal de Apelaciones y el Tribunal Supremo. Mediante Resolución de 21 de febrero de 2014 denegamos expedir el recurso presentado. Apéndice del *Certiorari*, págs. 1123 y 1236.

[8] Apéndice del *Certiorari*, pág. 1230.

[9] Apéndice del *Certiorari*, pág. 2617.

en la vista de certificación de clase se desprende por preponderancia de prueba que:

> (1) entre los años 1999 y 2009 PRTC les estuvo cobrando mensualmente a los miembros de la clase por concepto de renta de equipo ("Costumer Premises Equipment" o "CPE"); (2) que el cargo y cobro por CPE fue ilegal toda vez que no estaba basado en costo, según lo exige el Art. 8 de la Ley de Telecomunicaciones de Puerto Rico de 1996, infra; (3) que el cobro por este concepto fue además fraudulento y carente de causa, toda vez que se violó el principio cardinal de la buena fe contractual al PRTC no haber provisto servicio alguno relacionado a ese concepto; y (4) que para ese periodo PRTC cobró ilegal y fraudulentamente por ese concepto una suma global no menor de $168,354,553.65.[10]

Particularmente, los recurridos expresaron que del informe y testimonio del perito Jeffrey A. Eisenach, provisto por la PRTC, se desglosa toda la información para identificar a los consumidores miembros de la clase a los que se le cobró el cargo mensual, así como la cantidad facturada en concepto de renta de equipo.[11] Asimismo, sostuvieron que de la declaración jurada y del testimonio del Sr. Tomas Pérez Ducy se desprende que la PRTC no brindaba servicio alguno por ese concepto y que conocía de la ilegalidad e improcedencia del cargo por CPE.

La peticionaria presentó una Moción de Desestimación el 18 de enero de 2019 y una Oposición a Sentencia Sumaria Conforme a la Regla 36.6 de Procedimiento Civil el 23 de enero de 2019. Entre otras cosas, en ambas comparecencias esbozó que los recurridos no habían presentado ninguna evidencia admisible que sustente las alegaciones de

---

[10] Apéndice del *Certiorari*, pág. 2624.
[11] Apéndice del *Certiorari*, pág. 2629.

incumplimiento de contrato y fraude contractual, y que la declaración jurada del exempleado, Sr. Tomás Pérez Ducy, constituía prueba de referencia y estaba cubierta por varios privilegios evidenciarios. Además, sostuvo que la solicitud de sentencia sumaria era prematura puesto que el descubrimiento de prueba no había culminado y este resultaba indispensable.

El 4 de junio de 2019, el Tribunal de Primera Instancia notificó una Sentencia Parcial. En esta acogió la postura de los recurridos en cuanto a que la peticionaria no cumplió con las formalidades exigidas en la Regla 36 de Procedimiento Civil y no controvirtió los hechos que la Clase Demandante estableció como incontrovertidos. Asimismo, resolvió que la PRTC "dolosamente y en contravención de la buena fe contractual, les facturó a los miembros de la clase Demandante una suma global de $168,354,553.65" entre los años 1999-2009 "con pleno conocimiento de que no prestaba servicio alguno por dichos cargos y de que ni siquiera contaba con equipo de reemplazo ni personal para prestar servicio alguno relacionado al servicio CPE".[12] Por otro lado, el foro primario determinó que el Sr. Tomás H. Pérez Ducy declaró sobre información de la que advino en conocimiento durante los dos años que laboró como un alto ejecutivo de la PRTC, y que sus expresiones sobre declaraciones de otro personal de la empresa no constituían prueba de referencia.

---

[12] Apéndice del *Certiorari*, págs. 2968 y 2972.

Inconforme, la peticionaria solicitó reconsideración, y posteriormente presentó un recurso de apelación ante el Tribunal de Apelaciones, foro que confirmó la determinación del foro primario el 14 de diciembre de 2020. Aun en desacuerdo, la peticionaria solicitó reconsideración la cual fue denegada.

Oportunamente, la peticionaria recurre ante nos y señala los errores siguientes:

> Erró el TA al confirmar la sentencia sumaria parcial del TPI, cuyo dictamen se fundamentó en prueba insuficiente en derecho e inadmisible, y sin base legal que lo sustente. La solicitud de sentencia sumaria debió ser denegada de plano como cuestión de derecho.

> Erró el TA al confirmar la sentencia sumaria parcial del TPI, la cual violó el debido proceso de ley de la PRTC al denegarle el derecho a llevar a cabo el descubrimiento de prueba en los méritos que fue acordado entre las partes y avalado por el propio TPI.

Examinado el recurso y una Segunda Moción de Reconsideración presentada por la peticionaria, acordamos expedir. Contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

II

El mecanismo de sentencia sumaria provisto por la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, permite la solución justa, rápida y económica de los litigios civiles que no presentan controversias genuinas de hechos materiales, es decir, de aquellos hechos que puedan afectar el resultado de la reclamación bajo el derecho sustantivo aplicable. SLG *Fernández-Bernal v. RAD-MAN San Juan*, 2021 TSPR 149, 208 DPR

__ (2021); *Roldán Flores v. M. Cuebas* et al.*,* 199 DPR 664 (2018); *Bobé* et al*. v. UBS Financial Services*, 198 DPR 6 (2017). De esta forma, cuando los documentos no controvertidos que acompañan la moción de sentencia sumaria demuestran que no hay una controversia de hechos esenciales y pertinentes, se prescinde de la celebración de un juicio y por lo tanto, únicamente resta aplicar el Derecho. *Rosado Reyes v. Global Healthcare*, 205 DPR 796 (2020); *León Torres v. Rivera Lebrón*, 204 DPR 20(2020); *Meléndez González* et al. *v. M. Cuebas*, 193 DPR 100 (2015).

Para prevalecer por la vía sumaria, la parte demandante debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Ramos Pérez v. Univisión*, 178 DPR 200 (2010). En lo pertinente al caso de autos, para que la acción en daños por incumplimiento de contrato prospere, la parte demandante debe probar la existencia de los daños alegados, el incumplimiento culposo o doloso de la obligación contractual, y la relación causal entre el incumplimiento y los daños. Art. 1054 del Código Civil, 31 LPRA ant. sec. 3018. Véase además, *Muñiz Olivari v. Stiefel Labs*., 174 DPR 813 (2008). Con ese fin, deberá desglosar los hechos que alega no están en controversia con referencia específica a la prueba admisible y sustancial que lo sustenta. *León Torres v. Rivera Lebrón*, supra; *Roldán Flores v. M. Cuebas* et al.*,* supra.

En cuanto a las declaraciones juradas que acompañen su solicitud, estas deben cumplir con lo dispuesto en la Regla

36.5 de Procedimiento Civil, 32 LPRA Ap. V, por lo que se deben basar en el conocimiento personal del declarante, contener hechos que serían admisibles en evidencia y demostrar afirmativamente que el declarante está cualificado para testificar en cuanto a su contenido. Por el contrario, y como hemos expresado en repetidas ocasiones, las declaraciones juradas que contienen solo conclusiones sin hechos específicos que las apoyen, no tienen valor probatorio. Estas son insuficientes para demostrar la existencia de lo que concluyen. *Roldán Flores v. M. Cuebas et al.*, supra; *Ramos Pérez v. Univisión*, supra.

Todo lo expresado sobre el trámite de sentencia sumaria presupone que las partes han podido llevar a cabo el descubrimiento de prueba necesario. *León Torres v. Rivera Lebrón*, supra. De lo contrario, el tribunal debe proveerle a las partes una oportunidad razonable para efectuarlo. En vista de ello, nuestro ordenamiento jurídico también contempla que los tribunales, en el ejercicio de su discreción, pospongan la evaluación o denieguen una moción de sentencia sumaria ante la falta de una oportunidad adecuada de obtener prueba para sustentar una oposición. Regla 36.6 de Procedimiento Civil, 32 LPRA Ap. V.

Por otro lado, ante una solicitud de sentencia sumaria el promovido no debe tomar una actitud pasiva ni descansar solamente en sus alegaciones. Este debe controvertir la prueba presentada por el promovente, mediante contestación detallada y específica sobre aquellos hechos pertinentes

acompañada de prueba admisible, y así demostrar que existe una controversia real y sustancial que debe dilucidarse en un juicio. *Abrams Rivera v. ELA*, 178 DPR 914, 933 (2010); *Piovanetti v. S.L.G. Touma, S.L.G. Tirado*, 178 DPR 745, 774 (2010). Si el promovido se cruza de brazos, se expone a que le dicten sentencia sumaria en su contra sin la oportunidad de un juicio en su fondo. *León Torres v. Rivera Lebrón*, supra.

Sin embargo, el que el promovido no contravenga la prueba presentada en la solicitud de sentencia sumaria no significa necesariamente que procede automáticamente la concesión de la sentencia. SLG *Fernández-Bernal v. RAD-MAN San Juan*, supra; *Piovanetti v. S.L.G. Touma, S.L.G. Tirado*, supra. Esto es así porque la sentencia sumaria puede dictarse a favor o en contra del promovente, según proceda en Derecho. *Rosado Reyes v. Global Healthcare*, supra; *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 DPR 563 (1997). Es decir, se debe cumplir con el criterio rector de que los hechos incontrovertidos y la evidencia de autos demuestren que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente. *Rosado Reyes v. Global Healthcare*, supra.

Por otro lado, en cuanto a la revisión de las sentencias sumarias, el Tribunal de Apelaciones debe utilizar los mismos criterios que el tribunal sentenciador. *Meléndez González* et al. *v. M. Cuebas*, supra. De igual forma, está obligado a examinar *de novo* la totalidad de los autos a la luz más

favorable al promovido. Íd. Esto, pues solo procede dictar sentencia sumaria en casos claros y cualquier duda sobre los hechos materiales debe resolverse en contra de la parte promovente. *Rosado Reyes v. Global Healthcare*, supra, *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, supra, pág. 575.

Visto el derecho aplicable, procedemos a resolver la controversia de autos.

III

Como señaláramos, el Tribunal de Primera Instancia emitió una Sentencia Parcial en la que acogió la Solicitud de Sentencia Sumaria de la Clase Demandante en cuanto a que la PRTC no se opuso correctamente a dicha solicitud y de que esta incumplió dolosamente sus obligaciones contractuales al facturarle a la Clase Demandante por servicios que no prestaba. Así, en las determinaciones de hechos el Tribunal de Primera Instancia detalló la composición de la clase, los equipos por los que se facturaron los cargos, las sumas desglosadas y totales de los cobros realizados.[13] Por otro lado, en cuanto a la responsabilidad de la PRTC por el alegado cobro doloso a los miembros de la Clase Demandante, determina que:

> 8. Por la renta de equipo o CPE que PRTC le facturaba a los miembros de la clase Demandante, PRTC no brindaba servicio alguno, pues no vendía ni servía equipo monolíneas para clientes residenciales o negocios pequeños. Se trataba de equipos obsoletos, descartados,

---

[13] La PRTC reconoce que "[l]as determinaciones de hecho 2 a la 6, meramente hacen referencia a datos generales provistos por el perito de PRTC sobre la facturación o gestión de cobro de PRTC en torno al cargo de renta de equipo telefónico o CPE". *Certiorari*, pág. 14.

depreciados y para los cuales PRTC ni siquiera llevaba un registro de inventario y/o propiedad (Párrafos 11 y 17 de la *Declaración Jurada* de Tomás H. Pérez Ducy, Anejo VII).

9. PRTC ni siquiera contaba con equipo de reemplazo ni con personal alguno que estuviese asignado para proveer servicio de mantenimiento a los miembros de la Clase objeto del cargo por CPE. (Testimonio de Tomás H. Pérez Ducy, T.P.O. a las págs. 217-18, Anejo VIII). Simplemente, PRTC no proveía servicio alguno de reparación o mantenimiento de equipos monolíneas. (Testimonio de Tomás H. Pérez Ducy, T.P.O. a la pág. 239, Anejo VIII).

10. El cobro de la renta de equipo o CPE no representaba costo alguno para PRTC, ya que el valor de los equipos en posesión de los consumidores era nominal, y PRTC no contaba con inventario de reemplazo ni con unidades para servicio de mantenimiento. (Testimonio del perito José M. Barletta Rodríguez, T.P.O. a la pág. 347, Anejo IX).

11. PRTC conocía de la ilegalidad e improcedencia del cargo por CPE ya que, para finales de 2004, el señor Tomás H. Pérez Ducy, quien en ese entonces ocupaba la posición de Vicepresidente de Ventas y Mercadeo en PRTC, recomendó la eliminación de los cargos CPE para clientes con equipo monolínea ante las múltiples quejas de los clientes por esos cargos. No obstante, su recomendación fue rechazada y denegada por la Presidenta y CEO de PRTC y la empresa continúo cobrando esos cargos. (Declaración Jurada de Tomás H. Pérez Ducy, a la pág. 3, Anejo VII).

12. Incluso, en 2005, el señor Tomás H. Pérez Ducy solicitó una opinión legal del departamento legal de PRTC sobre sus preocupaciones, y el vicepresidente de la división legal de PRTC, el licenciado Roberto García, le manifestó su conclusión preliminar de que el cargo era de dudosa validez y que, por tanto, la empresa podía estar incurriendo en riesgos legales. (Declaración Jurada de Tomás H. Pérez Ducy, a la pág. 4, Anejo VII).

13. La manera de PRTC de lidiar con los cargos por CPE cuando los clientes los objetaban era acreditarles la suma facturada para el mes en el que el cliente se quejaba. Pero para los clientes que no se quejaban, PRTC continuó facturándoles y cobrándoles el cargo de CPE. (Testimonio de Tomás H. Pérez Ducy, T.P.O. a las págs. 221-223, Anejo VIII). Apéndice del *Certiorari*, págs. 163-167.

Posteriormente, el Tribunal de Apelaciones confirmó el dictamen del foro primario tras concluir que no existía controversia de hechos materiales que evitara la disposición del caso. También concluyó que la prueba presentada demostró que la PRTC incumplió con el contrato de servicios suscrito con miles de clientes al realizar cobros indebidos.

Empero, al revisar una sentencia dictada sumariamente debemos asegurarnos de que la evidencia de autos demuestre que el promovente tiene derecho a la sentencia sumaria. Esto, pues no podemos conceder una sentencia de forma automática cuando la prueba presentada no demuestra el derecho del promovente a esta.

Así, de nuestro examen del expediente podemos observar que el foro primario sostuvo las determinaciones de hechos relacionadas al alegado incumplimiento contractual doloso de la PRTC únicamente en la declaración jurada y el testimonio del Sr. Tomás H. Pérez Ducy. Veamos.

Específicamente en cuanto al testimonio del Sr. Tomás H. Pérez Ducy, consta en el expediente que la Junta limitó el descubrimiento de prueba y la vista evidenciaria a los asuntos relacionados con la certificación de la clase.[14] Por

---

[14] El representante legal de los recurridos expresó en la vista evidenciaria ante el Oficial Examinador de la Junta lo siguiente:

"LCDO. ANDREU FUENTES:
…
El señor Tomás Pérez Ducy habrá de testifica[r] en el día de hoy sobre los asuntos pertinentes, su Señoría, a los elementos de certificación de la clase. Los elementos de certificación de la clase más importantes son numerosidad, comunidad y tipicidad.
…
En otras palabras, es un testimonio dirigido exclusivamente, no habrá de testificar nada que sea ni privilegiado ni confidencial ni que tenga que ver con el privilegio abogado-cliente, ni que

ello, en repetidas ocasiones el Oficial Examinador debió recalcar tal limitación a los representantes legales. Surge del expediente que el testimonio del señor Pérez Ducy fue así limitado, objetado, refutado o cualificado.[15] Esto conllevó que finalmente la representación legal de los recurridos manifestara para récord cuál era el testimonio ofrecido y no admitido del señor Pérez Ducy, aspectos que tienen injerencia sobre las determinaciones de hechos antes señaladas.[16]

---

tenga que ver con ningún privilegio de la Puerto Rico Telephone. No habrá de testificar sobre ningún asunto relacionado a la legalidad o no del cargo en los méritos ni si ese cargo por ley o por regulación se permitía o no se permitía". Apéndice del *Certiorari*, págs. 462-465.

[15] Sobre la limitación del testimonio, el Oficial Examinador expresó:

"OFICIAL EXAMINADOR:
Mire, vamos a dar por concluido. Definitivamente, o sea yo vuelvo y reitero [el] derecho de las partes a traer prueba sobre la cuestión de los méritos, si es que se llegara a ese momento, pues lo tendremos, punto, se acabó. En el día de hoy yo solamente voy a recibir prueba con relación a la certificación de la clase que es lo que tenemos aquí, nada más. Claro, repito va a haber cosas mixtas, ya se han depurado otras, puede haber cosas mixtas que a veces le es difícil a uno decir aquí "pues, mira, sí esto sí, esto no". Y si pasara y resulta que no debe ser yo lo voy a descartar para los fines de la certificación. En su día las partes podrán enfrentarse, si es que eso llegase a los méritos, y verán entonces la prueba sobre esos otros aspectos. Pero a mí lo único que me ocupa es la certificación en estos momentos, más nada. Yo lo único que pedí a los compañeros fue que trataran de autolimitarse lo más posible sin violentar el derecho que tienen, y ustedes, y yo soy el primero que tengo que reconocerle que tienen un derecho a hacer todas las objeciones que entiendan pertinentes y que surjan en el récord. O sea, eso yo, eso es sagrado para ambas partes". Apéndice del *Certiorari*, pág. 494.

[16] En cuanto al testimonio ofrecido y no admitido del Sr. Tomás H. Pérez Ducy surge del expediente:

"LCDO. ANDREU FUENTES:
Nosotros quisiéramos Su Señoría manifestar para récord y verter para récord cuál es la evidencia ofrecida y no admitida para que quede en récord cuál iba a ser su testimonio en ese particular, Vuestro Honor.

OFICIAL EXAMINADOR:
Adelante.

LCDO. ANDREU FUENTES:

Por lo tanto, solo queda la declaración jurada del Sr. Tomás H. Pérez Ducy. Esta fue presentada con la *Segunda Querella de Clase Enmendada*. Así, de la declaración jurada surge que el señor Pérez Ducy fue empleado de la PRTC entre el 2004 y el 2006. En vista de ello, el testigo reconoció que los cobros en controversia se originaron de transacciones realizadas antes de su empleo en la empresa. Además, expresó que al conocer que los cargos por concepto de *telephone rent* han sido históricamente fuente de discordia en las empresas de telecomunicaciones, recomendó la eliminación de estos. Asimismo, de forma general expresó que fue "informa[do] que la PRTC estaba cobrando renta por equipos obsoletos, descartados, depreciados y que ni siquiera existían en un registro de inventario y/o propiedad en la PRTC", por lo que ante sus dudas sobre el sostenimiento legal de los cargos, solicitó una opinión del Departamento Legal de la PRTC. En

---

Sí. Su Señoría, se le preguntó específicamente al testigo que cuál era la raíz de la investigación que él había hecho sobre el cargo de "telephone rent". Se le preguntó cuál fue su recomendación a la compañía. El habría de contestar que su recomendación fue que se eliminara el cargo. Que eso estaba fundamentado en el hecho de que el cargo no estaba basado en ningún costo para la compañía porque, uno, no había equipo de reemplazo. Los equipos estaban desvalorados, estaban depreciados y estaban fuera de los libros de la compañía. Y además porque no se rendía el servicio de mantenimiento. Ante eso la presidenta de la compañía le dijo que no iba a eliminar el cargo de "telephone rent" a menos que se encontrara otra fuente de ingreso igual para sustituir la fuente de ingreso de "telephone rent". A nosotros nos parece, Su Señoría, que ese testimonio ofrecido y no admitido es importante para la certificación de la clase. Repito, a pesar de que puede haber alguna materia que tenga que ver con los méritos del asunto, lo cierto es que también es pertinente para la certificación de la clase. Por qué. Porque eso demuestra que la…

OFICIAL EXAMINADOR:
Perdone que le interrumpa. Ya usted dijo cuál es su ofrecimiento".
Apéndice del *Certiorari*, pág. 547.

ese contexto, también indicó que el entonces Vicepresidente del Departamento Legal le "expresó que su conclusión preliminar era que el cargo era de dudosa validez".[17] Expresó que esta solicitud culminó con la recomendación del Departamento Legal de solicitar una opinión legal externa. Sin embargo, acepta que para cuando dejó su puesto en el 2006, esta opinión no se había realizado.

Por lo tanto, al examinar la declaración jurada del señor Pérez Ducy concluimos que esta solo contiene conclusiones sin hechos específicos que apoyen la determinación del foro primario en cuanto al incumplimiento doloso del peticionario. Esta declaración jurada, no puede considerarse como prueba incontrovertible de los elementos de la causa de acción que los recurridos pretenden probar ni prueba sustancial para sostener los hechos que ellos enumeran.

Procedía entonces denegar la solicitud de sentencia sumaria presentada. Por lo tanto, se devuelve el caso para que las partes tengan una oportunidad razonable para efectuar un descubrimiento de prueba adecuado sobre los méritos de la reclamación.[18]

IV

Por los fundamentos antes expuestos, se revoca el dictamen del Tribunal de Apelaciones. Se devuelve el caso al

---

[17] Apéndice del *Certiorari*, pág. 166.
[18] En vista de que nuestra determinación concede a las partes una oportunidad razonable para llevar a cabo un descubrimiento de prueba adecuado, no es necesario atender el segundo señalamiento de error.

Tribunal de Primera Instancia para que los procedimientos continúen acorde con lo aquí expresado.

Lo acordó y manda el Tribunal y certifica el Secretario del Tribunal Supremo.  El Juez Asociado señor Estrella Martínez disiente con Opinión escrita.  El Juez Asociado señor Colón Pérez disiente con Opinión escrita a la cual se une la Jueza Presidenta Oronoz Rodríguez. El Juez Asociado señor Martínez Torres se inhibió.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Howard Ferrer; B/JCS Delibox; Dora García; Nelson Capote; Ismael Torres y Eneida Román <br><br> Recurridos <br><br> v. <br><br> Puerto Rico Telephone Company <br><br> Peticionaria | CC-2021-0154 | Certiorari |

Opinión disidente emitida por el Juez Asociado Señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 8 de junio de 2022.

Este pleito es producto del esfuerzo concertado de miles de consumidores (Clase Demandante) que exigen a la Puerto Rico Telephone Company (PRTC) que devuelva más de $168 millones que cobró durante una década mediante un cargo mensual de servicio de renta, mantenimiento y reemplazo de equipo telefónico a pesar de ser improcedente como cuestión de Derecho. Mas, la Sentencia que hoy certifica una mayoría de este Tribunal representa un escollo injustificado en la vindicación de los derechos de estos consumidores y posterga innecesariamente la resolución de esta acción de clase, la cual lleva más de trece (13) años en litigio.

A mi juicio, esta controversia reúne todos los requisitos para resolverse sumariamente a favor de la Clase Demandante. Entiéndase, considero que el Tribunal de Primera Instancia actuó correctamente al acoger los

hechos incontrovertidos presentados por la Clase Demandante debido a que, en primer lugar, _todos_ están sustentados en prueba que obra en los autos del caso y, en segundo lugar, la oposición que presentó la PRTC fue insuficiente. Más relevante aún, como cuestión de Derecho procedía otorgar el remedio solicitado tras más de trece (13) años de litigación activa.

No obstante, a pesar de cuán evidente era tal proceder en Derecho, en una movida sorprendente, este Tribunal dictaminó la revocación del dictamen sumario que favoreció a los consumidores en este pleito. Para intentar justificar tal curso de acción, obvió sus propios pronunciamientos en casos anteriores en cuanto a los efectos de incumplir con los requisitos de forma en la oposición a una moción de sentencia sumaria. En cambio, redujo los parámetros en este caso, los cuales hubieran bastado -bajo su óptica adjudicativa- para disponer de esta controversia, y, con ello, dejó desprovista a la Clase Demandante de un remedio oportuno.

Con este proceder, el bloque mayoritario premia la desidia de la PRTC ante una moción de sentencia sumaria y ahora le exime de las consecuencias de su inacción. De esta forma, no se le pasa factura a la PRTC, más bien se le favorece. Ante ello, disiento.

A continuación, expongo los fundamentos en Derecho que orientan mi postura en cuanto a este extremo.

I

El objetivo principal de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, es facilitar el acceso a los tribunales y garantizar una solución justa, rápida y económica en el manejo del caso de todo procedimiento. Regla 1 de Procedimiento Civil, supra. Véase, además, Gulf Petroleum et al. v. Camioneros, 199 DPR 962, 983 (2018) (Opinión disidente del Juez Asociado señor Estrella Martínez). Rivera Figueroa v. Joe's European Shop, 183 DPR 580, 595 (2011).

En armonía con este objetivo, la moción de sentencia sumaria es un mecanismo que propicia la solución justa, rápida y económica de controversias en las cuales es innecesario celebrar un juicio plenario. González Santiago v. Baxter Health Care, 202 DPR 281, 290 (2019); Const. José Carro v. Mun. Dorado, 186 DPR 113, 128 (2012). Esta se puede solicitar sobre la totalidad o alguna parte de la reclamación. Reglas 36.1 y 36.2 de Procedimiento Civil, supra. Ahora bien, la sentencia sumaria es un mecanismo procesal discrecional y excepcional que solo debe utilizarse "cuando no existen controversias de hechos medulares y lo único que resta es aplicar el derecho". Mun. de Añasco v. ASES et al., 188 DPR 307, 326 (2013).

El tribunal podrá dictar sentencia sumaria si de "**las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas, y de cualquier otra evidencia ofrecida, surja que no existe**

**controversia real y sustancial en cuanto a algún hecho material[1] y que, como cuestión de derecho, proceda dictar sentencia sumaria a favor de la parte promovente".** (Negrillas suplidas). <u>Lugo Montalvo v. Sol Meliá Vacation</u>, 194 DPR 209, 225 (2015). Véase, también, <u>Pérez Vargas v. Office Depot</u>, 203 DPR 687, 699 (2019); <u>Rodríguez García v. UCA</u>, 200 DPR 929, 941 (2018); <u>Oriental Bank v. Perapi et al.</u>, 192 DPR 7, 25 (2014); <u>Const. José Carro v. Mun. Dorado</u>, supra, pág. 128.

Ante una moción de sentencia sumaria, el tribunal deberá examinar concienzudamente la petición y los documentos que la acompañan, así como la moción en oposición, y determinar si estas cumplen con el rigor requerido por la Regla 36.3 de Procedimiento Civil, <u>supra</u>. De igual forma, deberá establecer en qué conducta incurrieron las partes y las circunstancias que rodearon esas actuaciones. <u>Lugo Montalvo v. Sol Meliá Vacation</u>, supra, pág. 227. Estos hechos "debe[rán] ser interpretados por el juez para determinar si son esenciales y pertinentes, y si se encuentran controvertidos". Íd. De no existir controversias de hechos, el tribunal deberá dictar sentencia sumaria a favor del promovente de la

---

[1] En este contexto, un hecho material esencial y pertinente es aquel que puede afectar el resultado de la reclamación en conformidad con el derecho sustantivo aplicable. <u>Cruz Vélez v. CEE y otros</u>, 206 DPR 694, 745 (2021) (Sentencia) (Opinión disidente del Juez Asociado señor Estrella Martínez); <u>Bobé et al. v. UBS Financial Services</u>, 198 DPR 6, 20-21 (2017).

solicitud si el derecho le favorece. Íd. Por lo anterior, las partes tienen que cumplir con la regla 36.3 de Procedimiento Civil, supra, la cual establece los requisitos de forma que deben satisfacer tanto la parte promovente como la promovida. Meléndez González et al. v. M. Cuebas, 193 DPR 100, 110 (2015).

De un lado, la parte promovente de la moción tiene que detallar los hechos relevantes sobre los cuales no existe controversia sustancial. Para ello, se le exige que los desglose en párrafos debidamente enumerados y, para cada uno de ellos, tiene que hacer referencia a la página o párrafo de la declaración jurada u otro documento admisible en evidencia que lo sustenta. Regla 36.3(1)(4) de Procedimiento Civil, supra. Además, el promovente de la moción deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, o sea, sobre ningún componente de su causa de acción. Ramos Pérez v. Univisión, 178 DPR 200, 217 (2010); Nieves Díaz v. González Massas, 178 DPR 820, 848 (2010).

De otro lado, la parte promovida no puede cruzarse de brazos y descansar meramente en sus alegaciones o defensas. Córdova Dexter v. Sucn. Ferraiuoli, 182 DPR 541, 556 (2011). Al contrario, se le requiere detallar aquellos hechos que entiende se encuentran en controversia y controvertir la prueba presentada por la parte promovente. Rosado Reyes v. Global Healthcare, 205 DPR 796, 808 (2020).

A esos fines, la Regla 36.3(b)(2)-(4) de Procedimiento Civil de 2009, supra, establece que una oposición correcta a una moción de sentencia sumaria debe contener:

> (2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
> (3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal, y
> (4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable. Íd.

Al interpretar el alcance de esta disposición, un sector mayoritario de este Tribunal ha adoptado una visión formalista en la evaluación de los requisitos dispuestos en la regla precitada. SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414, 434 (2013). Véase también, Lugo Montalvo v. Sol Meliá Vacation, supra, pág. 237 (Opinión disidente del Juez Asociado señor Estrella Martínez). De acuerdo con la postura mayoritaria, para oponerse correctamente, la parte promovida está obligada a "examinar cada hecho consignado en la solicitud de sentencia sumaria y, para todos los que

considere que existe controversia, identificar el número del párrafo correspondiente y plasmar su versión contrapuesta fundamentada en evidencia admisible". SLG Zapata-Rivera v. J.F. Montalvo, supra. De no seguir estas directrices, el tribunal podrá no tomar en consideración su intento de impugnación. Íd., pág. 433. Asimismo, el tribunal procederá a dictar sentencia sumaria a favor de la parte promovente si esta procede como cuestión de Derecho. Meléndez González et al. v. M. Cuebas, supra, pág. 111 (citando a SLG Zapata-Rivera v. J.F. Montalvo, supra).

Finalmente, al revisar la corrección de la determinación del foro primario, los tribunales apelativos deberán realizar una evaluación de novo de la controversia. Meléndez González et al. v. M. Cuebas, supra, pág. 116. En ese análisis estamos facultados a: **1) considerar los documentos que se presentaron ante el foro primario; 2) determinar si existe o no alguna controversia genuina de hechos materiales, y 3) revisar si se aplicó el Derecho de forma correcta.** Íd., Véase, también, Vera v. Dr. Bravo, 161 DPR 308, 335 (2004).

Siendo este el marco normativo que rige lo relacionado a la moción de sentencia sumaria, procedo a aplicarlo a los hechos particulares de la presente controversia. Como cuestión de umbral, analizaré si las partes cumplieron con los requisitos que dirigen la solicitud de sentencia sumaria y su oposición

correspondiente. Adelanto que la PRTC incumplió de forma obstinada; más importante aún, desde mi metodología adjudicativa, como cuestión de Derecho, no tiene razón ante los claros hechos incontrovertidos. Veamos.

**II**

**A.**

En el caso de autos, el **18 de diciembre de 2018**, la Clase Demandante instó una <u>Solicitud de sentencia sumaria</u>.[2] En esta, propuso quince (15) hechos incontrovertidos los cuales, en conjunto, establecían que: (1) entre el 1999 y el 2009, la PRTC facturó mensualmente a los miembros de la Clase Demandante un cargo por concepto de servicio de renta, mantenimiento y reemplazo de equipo telefónico fluctuante entre $1.00 y $3.00; (2) que en ese periodo de tiempo, la PRTC cobró a la Clase Demandante más de $168 millones por ese concepto; (3) que a cambio de ese pago, la Clase Demandante no recibía servicio alguno ya que la PRTC no vendía ni servía equipo monolíneas para clientes residenciales o negocios; (4) que el equipo que proveían era obsoleto, depreciado y para los cuales la PRTC ni siquiera llevaba un registro de inventario y/o propiedad, y (5) que la PRTC conocía de la improcedencia del cargo y aun así continuó cobrándolo.[3]

---

[2] Apéndice del <u>certiorari</u>, <u>Solicitud de sentencia sumaria</u>, págs. 2623-2643.

[3] La Clase Demandante acompañó su solicitud con prueba testifical y documental amplia. En específico, hizo referencia a la prueba pericial de la PRTC, de la cual se

En respuesta, la PRTC presentó su escrito en oposición en el cual, de forma general, adujo que los hechos propuestos por la Clase Demandante eran infundados y carecían de prueba.[4] Es decir, no rebatió de forma pormenorizada los hechos propuestos por la Clase Demandante. Ello, bajo el pretexto de que la solicitud de sentencia sumaria era prematura, pues aún no había culminado el descubrimiento de prueba. Adujo que ello era necesario para controvertir todos los hechos propuestos por la Clase Demandante y estar en posición de presentar su propia moción de sentencia sumaria. Por tanto, solicitó que se denegara de plano la moción de la Clase Demandante y se ordenara la continuación del descubrimiento de prueba.

Posteriormente, el foro de instancia celebró una vista argumentativa para que las partes expusieran sus argumentos en cuanto al petitorio sumario. Transcurridos

---

desprende el total de consumidores a los que se les cobró el cargo impugnado y la cifra total que estos pagaron. Además, suplieron extractos del testimonio y la declaración jurada del ex Vicepresidente de Ventas y Mercado, el Sr. Tomás Pérez Ducy, al igual que el del perito de la Clase Demandante. Con estos apoyaron su contención de que la PRTC no brindaba servicio alguno por ese concepto y que conocía de la improcedencia de ese cargo. Finalmente, produjeron extractos del testimonio de varios miembros de la Clase Demandante, quienes identificaron el cargo en sus facturas y afirmaron que lo pagaron bajo la creencia de que la PRTC obraba de buena fe al incluirlo en sus facturas mensuales. Véase, Apéndice del certiorari, págs. 2643-2738.

[4]Apéndice del certiorari, Oposición a sentencia sumaria conforme a la Regla 36.6 de Procedimiento Civil, págs. 2786-2792.

más de seis (6) meses desde la presentación de la moción y luego de evaluar la prueba documental, el **4 de junio de 2019**, el Tribunal de Primera Instancia concedió la solicitud de sentencia sumaria a favor de la Clase Demandante.[5]

En primer lugar, de conformidad con el marco normativo discutido previamente, el foro primario analizó si las partes cumplieron con los requisitos estatuidos en la Regla 36.3 de Procedimiento Civil, supra. De este modo, determinó que la Clase Demandante cumplió con todas las exigencias reglamentarias. No así la PRTC, quien optó por cruzarse de brazos bajo el argumento injustificado de que le faltaba prueba por descubrir para oponerse a la solicitud de sentencia sumaria. Por ello, el Tribunal de Primera Instancia resaltó que era "**altamente revelador que PRTC no pudiera conseguir ni un solo funcionario de PRTC para intentar poner en entredicho bajo juramento los hechos aducidos por la Clase Demandante**".[6]

En consecuencia, concluyó que la PRTC no se opuso adecuadamente al petitorio sumario de la Clase Demandante. Así, en el pleno uso de su discreción, el foro primario determinó que no había impedimento alguno para considerar,

---

[5](Negrillas suplidas). Apéndice del certiorari, Sentencia parcial, págs. 2949-2974.

[6]Íd., pág. 2971.

en esos momentos, la solicitud de sentencia sumaria. El Tribunal de Apelaciones confirmó ese proceder.

Coincido con la apreciación de los foros recurridos. **Y es que, aún bajo el criterio liberal que he defendido en cuanto al cumplimiento con los requisitos reglamentarios para oponerse a una solicitud de sentencia sumaria, es forzoso concluir que la oposición de la PRTC no satisface las exigencias de la regla 36.3 de Procedimiento Civil, supra**. Véase, SLG Zapata-Rivera v. J.F. Montalvo, supra, pág. 472 (Opinión disidente del Juez Asociado señor Estrella Martínez).

Pese a lo anterior, la Mayoría acoge la teoría de la PRTC, quien insiste en que no procedía dictar sentencia sumaria porque no había culminado el descubrimiento de prueba. Así, se introduce sigilosa y selectivamente una nueva interpretación de la Regla 36.6 de Procedimiento Civil, supra.[7] **No puedo avalar este planteamiento.**

En primer lugar, nada impide que la parte demandante presente una solicitud de sentencia sumaria durante el descubrimiento de prueba. La regla 36.1 de Procedimiento

---

[7] Esta regla permite que el tribunal posponga o tome alguna otra providencia con respecto a la moción de sentencia sumaria por razón de que el promovido ha demostrado la necesidad de concederle un término razonable de descubrir prueba para oponerse a esa solicitud. **Sin embargo, nuestras interpretaciones sobre su alcance se han dado dentro del contexto en el que un demandado insta una solicitud de sentencia sumaria por insuficiencia de la prueba.** Véase, García Rivera et al. v. Enríquez, 153 DPR 323 (2001); Pérez v. El Vocero de P.R., 149 DPR 427 (1999); Medina v. M.S. & D. Química P.R., Inc., 135 DPR 716 (1994).

Civil, supra, solo condiciona su presentación a los límites de tiempo allí establecidos.[8] En ese sentido, que se presentara la solicitud dispositiva en medio del descubrimiento de prueba no derrota el hecho de que previamente se habían realizado múltiples deposiciones, se celebró una vista evidenciaria y se admitió en los autos prueba pericial y documental extensa que ofrece datos claves para dilucidar la legalidad del cargo impugnado.

Asimismo, debo enfatizar que la PRTC tuvo oportunidad amplia de presentar prueba que controvirtiera la ofrecida por la Clase Demandante y optó por no hacerlo. Máxime, al tomar en consideración que es la propia PRTC quien tiene el control y poder sobre la prueba para derrotar aquella presentada por la Clase Demandante. **Nótese que no estamos ante un litigante en una posición desventajosa que no ha tenido tiempo de obtener prueba para mantener viva su causa de acción. Todo lo contrario. Estamos ante una parte con amplios recursos y que, de hecho, es la custodia de gran parte de la prueba en este caso. Por tanto, este Tribunal no debió convalidar la desconexión de la PRTC quien, a**

---

[8]La regla precitada establece que la parte demandante podrá presentar una moción de sentencia sumaria en cualquier momento después de haber transcurrido veinte (20) días a partir de la fecha en que se emplaza a la parte demandada, o después que la parte contraria le haya notificado una moción de sentencia sumaria, pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba. Regla 36.1 de Procedimiento Civil, supra.

**pesar de todo lo anterior, no hizo un esfuerzo genuino de oponerse adecuadamente a la moción dispositiva presentada por la Clase Demandante.**

A pesar de esa inadecuada oposición, para ser consecuente y no propiciar que un automatismo extremo conduzca a la concesión de un remedio sumario que no se sostenga en Derecho, procedo a analizar si los hechos incontrovertidos propuestos por la Clase Demandante están sostenidos por la prueba y si procede la solicitud como cuestión de Derecho.

**B.**

De entrada, coincido con la apreciación del Tribunal de Primera Instancia, el cual acogió los quince (15) hechos incontrovertidos propuestos por la Clase Demandante, pues <u>todos</u> estaban sustentados en prueba admitida en los autos del caso. De estos, reproducimos los siguientes:

> 1. La clase Demandante está compuesta por personas naturales y jurídicas que durante al menos un mes, entre los años 1999 y 2009, fueron suscriptores residenciales o comerciales de PRTC y pagaron un cargo mensual fluctuante entre $1.00 y $3.00 por concepto de renta, reparación, y reemplazo de equipo telefónico monolínea. (Informe de la JRT sobre certificación de reclamación de clase, a la pág. 11, Anejo I)
>
> [...]
>
> 3. El total de miembros de la clase a los que PRTC les facturó y cobró por concepto de cargo de CPE fue de 730,406 para enero de 1999, y fue gradualmente reduciéndose durante el transcurso del tiempo. La información proveniente de

PRTC desglosa el total de consumidores a los cuales se les cobró por CPE mensualmente a lo largo del periodo entre 1999-2009. (Tabla 2-4 del Informe del perito de PRTC Jeffrey Eisenach, Anejo II)

4. La información provista por PRTC incluye toda la información necesaria para identificar a los consumidores miembros de la clase a los que se le cobró el cargo de CPE, incluidos el nombre y dirección del cliente, número de teléfono, la suma facturada por CPE y el modelo CPE. (Tablas 1,2-1, y 2-B del Informe del perito de PRTC Jeffry Eisenach, Anejo II; testimonio del perito del PRTC Jeffry Eisenach T.P.O. en las páginas. 628-29, Anejo III).

[…]

6. Entre los años 1999-2009, PRTC les facturó y cobró a los miembros de la clase una suma global de $168,354,553.65 por concepto de renta de equipo o CPE, […] (Tabla 4 del Informe del perito de PRTC Jeffrey Eisenach, Anejo II).

[…]

8. Por la renta de equipo o CPE que PRTC le facturaba a los miembros de la clase Demandante, PRTC no brindaba servicio alguno, pues no vendía ni servía equipo monolíneas para clientes residenciales o negocios pequeños. Se trataba de equipos obsoletos, descartados, depreciados y para los cuales PRTC ni siquiera llevaba un registro de inventario y/o propiedad (Párrafos 11 y 17 de la Declaración Jurada de Tomás H. Pérez Ducy, Anejo VII)

9. PRTC ni siquiera contaba con equipo de reemplazo ni con personal alguno que estuviese asignado para proveer servicio de mantenimiento a los miembros de la Clase objeto del cargo por CPE. (Testimonio del señor Pérez Ducy, T.P.O. en las págs. 217-18,

Anejo VIII). Simplemente, PRTC no proveía servicio alguno de reparación o mantenimiento de equipos monolíneas. (Testimonio del señor Pérez Ducy, T.P.O. en la pág. 239, Anejo VIII).

10. El cobro de la renta de equipo o CPE no representaba costo alguno para PRTC, ya que el valor de los equipos en posesión de los consumidores era nominal, y PRTC no contaba con inventario de reemplazo ni con unidades para servicio de mantenimiento. (Testimonio del perito José M. Barletta Rodríguez, T.P.O. a la pág. 347, Anejo IX).

[…]

13. La manera de PRTC de lidiar con los cargos por CPE cuando los clientes objetaban era acreditarles la suma facturada para el mes en el que el cliente se quejaba. Pero para los clientes que no se quejaban, PRTC continuó facturándoles y cobrándoles el cargo por CPE. (Testimonio de Tomás H. Pérez Ducy, T.P.O. a las págs. 221-223, Anejo VIII).[9]

Como vemos, estos hechos incontrovertidos son esenciales, pertinentes y están sustentados en prueba que obra en los autos del caso. Por demás, la prueba en la que tales hechos fueron fundamentados no era desconocida para la PRTC. Al contrario, gran parte de esta **fue producida por la PRTC a través de los informes de su perito y de sus propias admisiones. Esta prueba no está compuesta de datos generales como aduce la <u>Sentencia</u> mayoritaria, sino que**

---

[9]Apéndice del <u>certiorari</u>, <u>Sentencia parcial</u>, págs. 2955-2965.

**representa hechos medulares y pertinentes para la causa de acción de la Clase Demandante.[10]**

Por otro lado, me parece errado descartar el testimonio vertido por el Ex Vicepresidente de la PRTC, el Sr. Tomás Pérez Ducy (señor Pérez Ducy), debido a que la vista evidenciaria se limitó a "los asuntos relacionados con la certificación de clase".[11] Ciertamente la vista evidenciaria se celebró a esos fines. Sin embargo, ello no produjo una prohibición absoluta a que se formularan y respondieran preguntas sobre los méritos de la reclamación debido a la imbricación entre un tema y el otro. Así quedó establecido y lo reconoció la representación legal de la PRTC durante el testimonio del señor Pérez Ducy.[12] **De hecho, los extractos de su testimonio que utilizó la Clase Demandante para sustentar sus hechos incontrovertidos versan, precisamente, sobre los méritos de la reclamación. Así pues, descartar su testimonio de plano bajo el argumento descontextualizado de que en la vista evidenciaria solo se tocaron temas relacionados con la certificación del pleito de clase es un argumento acomodaticio de la PRTC y este Tribunal no debió validarlo.**

---

[10]Véase, Sentencia, esc. 13.

[11]Íd., pág. 14.

[12]Véase, Apéndice del certiorari, pág. 568, en las líneas 5-7.

Debido a todo lo anterior, considero que el Tribunal de Primera Instancia y el de Apelaciones actuaron correctamente al acoger los hechos incontrovertidos presentados por la Clase Demandante en su totalidad.

**C.**

Así las cosas, solo resta dilucidar si, a base de estas determinaciones de hechos, se puede concluir que la Clase Demandante probó que la PRTC incurrió en un incumplimiento de contrato. **La respuesta es un sí evidente.** Como bien señala el criterio mayoritario, "para que la acción en daños por incumplimiento de contrato prospere, la parte demandante debe probar **la existencia de los daños alegados, el incumplimiento culposo o doloso de la obligación contractual,** y **la relación causal entre el incumplimiento y los daños**".[13] Precisamente, esto fue lo que hizo la Clase Demandante.

Aquí quedó establecido un incumplimiento de contrato mediante el cobro por un servicio inexistente. Esto, ya que de 1999 a 2009, la PRTC cobró a la Clase Demandante cargos por concepto de servicios de renta, mantenimiento y reemplazo de equipo telefónico que no prestó y para los cuales ni siquiera tenía equipo o personal disponible. Asimismo, se estableció que la facturación y cobro de ese cargo no representaba costo alguno para la PRTC, pues el

---

[13] (Negrillas suplidas). <u>Sentencia</u>, pág. 9 (citando el artículo 1054 del Código Civil de 1930, 31 LPRA ant. sec. 3018).

valor de los equipos era nominal y, además, la PRTC no contaba con inventario de ese equipo ni con el personal de mantenimiento para prestar servicio alguno con relación a este cargo. Como consecuencia, la PRTC sustrajo indebidamente del bolsillo de los consumidores más de $168 millones. Claramente, ello constituye un daño relacionado con el incumplimiento contractual de la PRTC. En consecuencia, es forzoso concluir que quedó establecido un **"ejemplo paradigmático de un incumplimiento de contrato mediante el cobro por un servicio inexistente, perpetuado por años por una compañía de telecomunicaciones en detrimento de miles de consumidores"**.[14]

Por todo lo anterior, considero que los foros recurridos dispusieron de esta controversia correctamente en Derecho. Insisto en que la prueba presentada por la Clase Demandante, en su mayoría provista por la PRTC, demuestra preponderantemente que esta incumplió con el contrato de servicios pactado con miles de sus clientes al realizar cobros por un servicio que no brindaba y sostener ese patrón por diez (10) años ininterrumpidos.

En definitiva, reafirmo que el Tribunal de Primera Instancia actuó correctamente tanto en la forma en que atendió la solicitud de sentencia sumaria como en la aplicación del Derecho. De igual forma, el Tribunal de

---

[14] (Negrillas suplidas). Apéndice del _certiorari_, _Sentencia parcial_, pág. 2972.

Apelaciones al confirmar ese accionar. Por consiguiente, procedía que confirmáramos a los foros recurridos y decretáramos la responsabilidad de la PRTC ante miles de consumidores por cobrarles un cargo por el cual, según quedó demostrado, no brindaba servicio alguno. **Sin embargo, al alejarse de esta conclusión, la Mayoría sencillamente impone barreras procesales inaplicables e infundadas para retrasar la determinación de responsabilidad a la PRTC en este pleito.**

### III

Por los fundamentos antes expuestos, reitero que, por no haber hechos medulares en controversia, este reclamo era susceptible a resolverse sumariamente a favor de la Clase Demandante. Ante ello, procedía que este Tribunal confirmara los dictámenes emitidos por los foros recurridos. Sin embargo, la Sentencia emitida por una Mayoría de este Tribunal hace lo contrario y, con ello, premia irrazonablemente la desidia y las estrategias dilatorias de la PRTC. Con este proceder se deja desprovisto de un remedio oportuno a la Clase Demandante.

Por consiguiente, no me queda más que distanciarme de la postura acogida por la Mayoría y disentir.


Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Howard Ferrer; B/JCS Delibox; Dora García; Nelson Capote; Ismael Torres y Eneida Román

       Recurridos

        v.

Puerto Rico Telephone Company

       Peticionaria

CC-2021-0154   *Certiorari*

Opinión Disidente emitida por el Juez Asociado señor COLÓN PÉREZ, a la cual se une la Jueza Presidenta ORONOZ RODRÍGUEZ.

En San Juan, Puerto Rico, a 8 de junio de 2022.

Transcurridos más de diez (10) años desde que se presentó ante la Junta Reglamentadora de Telecomunicaciones el pleito de clase que es objeto de revisión por este Tribunal, los cerca de trescientos mil (300,000) consumidores y consumidoras que fueron defraudados por la Puerto Rico Telephone Company finalmente vieron sus derechos reconocidos cuando el Tribunal de Primera Instancia, según confirmado por el Tribunal de Apelaciones, dictó sentencia sumaria parcial declarando con lugar sus reclamos. Reclamos que iban dirigidos a recuperar cierta suma de dinero cobrada ilegal y fraudulentamente por la mencionada empresa de telecomunicaciones en concepto de renta, mantenimiento y reemplazo de determinados equipos.

Hoy, sin embargo, en una actuación claramente desmedida y desmesurada, -- y porque no sorprendente --, una mayoría de mis compañeros y compañera de estrado, apoyados en una desvirtuada interpretación de la figura de la sentencia sumaria, deciden dejar sin efecto lo aquí ya resuelto por los foros *a quo*; impactando directamente con su actuación a miles de consumidores y consumidoras víctimas, como ya mencionamos, de las prácticas desleales de la Puerto Rico Telephone Company. Y que, en lo que a este caso se refiere, envuelven el recobro de unos cargos mensuales ilegal y fraudulentamente impuestos, ascendentes a, aproximadamente, $168,354,553.65. Ello nos resulta, en extremo, lamentable.

**La prudencia llamaba a abstenernos de intervenir en un pleito judicial que, a todas luces y en todas sus etapas, fue manejado observando, estricta y celosamente, lo dispuesto en nuestro ordenamiento procesal civil.** Como una mayoría de este Tribunal no lo hizo, disentimos. Veamos.

I.

Los hechos medulares que dan margen al presente litigio no están en controversia. Allá para el 24 de febrero de 2009, el Sr. Howard A. Ferrer Mejías, la Sra. Dora E. Román Rivera, el Sr. Nelson Capote y el Sr. Ismael Torres Otero (en conjunto, *"Consumidores de Servicios de Telefonía"*) presentaron ante la Junta Reglamentadora de Telecomunicaciones (en adelante, "Junta Reglamentadora") una *Querella de Clase*, en representación de los consumidores de servicios de telefonía comercial y residencial, en contra de

la Puerto Rico Telephone Company (en adelante, "PRTC"). A grandes rasgos, alegaron que, durante los años 1999 al 2009 la PRTC había cobrado de manera ilegal y fraudulenta un cargo mensual por concepto de renta, mantenimiento y reemplazo de equipo, también conocido como "customer premises equipment". En particular, señalaron que tales actuaciones eran contrarias a la buena fe contractual y a lo establecido en la Ley de Telecomunicaciones de Puerto Rico de 1996, Ley Núm. 213 de 12 de septiembre de 1996, según enmendada, 27 LPRA ant. sec. 265 *et seq.*, por lo que solicitaron el pago de las cantidades cobradas ilegalmente por la PRTC durante el periodo de tiempo mencionado.[1]

Enterada de lo anterior, la PRTC se opuso a la querella presentada por los *Consumidores de Servicios de Telefonía*. En esencia, negó haber actuado de mala fe o en contravención a lo dispuesto en su ley habilitadora y en los reglamentos aplicables. Por lo tanto, solicitó que se declarara sin lugar la querella en su contra.

Posteriormente, y en lo pertinente a la controversia que nos ocupa, el 9 de diciembre de 2009 la Junta Reglamentadora emitió una *Orden* mediante la cual autorizó el descubrimiento de prueba.[2] No obstante, y tras los

---

[1] Valga señalar que, el 20 de octubre de 2010, los *Consumidores de Servicios de Telefonía* presentaron una *Segunda querella de clase enmendada* mediante la cual, entre otras cosas, ampliaron sus alegaciones en contra de la PRTC sobre fraude, incumplimiento de contrato y mala fe contractual. El 19 de abril de 2011 la PRTC presentó su contestación a la segunda querella enmendada.

[2] En particular, surge que en la referida *Orden* se dispuso lo siguiente: "Se autoriza el descubrimiento de prueba el cual se llevará a cabo desde el 4 de enero de 2010 hasta el 26 de febrero de 2010. El descubrimiento se llevará a cabo conforme a la Regla 8.14 del Reglamento de Práctica y

*Consumidores de Servicios de Telefonía* cursar un *Primer pliego de interrogatorios y requerimiento de producción de documentos* a la PRTC, esta última solicitó a la Junta Reglamentadora bifurcar el descubrimiento de prueba para limitarlo, inicialmente, a la certificación de la querella como una de clase. Ello, al argumentar que permitir el descubrimiento de prueba sobre los méritos de las reclamaciones desde una etapa temprana de los procedimientos sería opresivo y podría tener el efecto de divulgar información confidencial de otros clientes de la PRTC.

Oportunamente, los *Consumidores de Servicios de Telefonía* se opusieron al petitorio de la PRTC. Lo anterior, por entender, entre otras razones, que éste era un subterfugio para dilatar los procesos administrativos que se celebraban ante la Junta Reglamentadora.

Evaluados los escritos de ambas partes, el 15 de abril de 2010 la Junta Reglamentadora emitió una *Resolución y Orden* mediante la cual declaró ha lugar la solicitud presentada por la PRTC para limitar el descubrimiento de prueba a los asuntos relacionados con la certificación de la clase propuesta. **Sin embargo, la Junta Reglamentadora reconoció que, en ese proceso de descubrimiento de prueba limitado, podría requerirse información pertinente a los asuntos en controversia, es decir, a los méritos del caso.** En consecuencia, dispuso que, de surgir alguna controversia al

---

Procedimiento General de [la JRT]". Véase, Apéndice del *certiorari*, pág. 84.

respecto -- entiéndase, sobre el descubrimiento de prueba en sus méritos --, las partes tendrían que llevar dicho asunto ante su consideración para determinar el curso de acción a seguir.

Superados varios incidentes procesales, -- entre ellos, unas mociones para que la Junta Reglamentadora tomara conocimiento de cierta declaración jurada presentada por el Sr. Tomás Pérez Ducy (en adelante, "señor Pérez Ducy"), Exvicepresidente de Ventas y Mercadeo de la PRTC, y para que ordenara a la PRTC a preservar toda aquella evidencia pertinente al caso de marras, ambas declaradas ha lugar mediante una *Resolución y Orden* notificada el 18 de marzo de 2011 -- los días 11, 12 y 13 de julio de 2012 se celebró la vista evidenciaria ante la Junta Reglamentadora. En ésta, las partes presentaron amplia prueba testifical y documental con el propósito de que la referida entidad gubernamental determinara la procedencia o no de la certificación de la clase.

En específico, surge que, en la aludida vista, los *Consumidores de Servicios de Telefonía* presentaron los testimonios del Sr. Ismael Torres Otero, el Sr. Howard A. Ferrer Mejías, la Sra. Rosa E. Román Rivera, el Sr. José M. Barletta Rodríguez, Contador Público Autorizado y del señor Pérez Ducy. Por su parte, la PRTC presentó el testimonio del Sr. Jeffrey A. Eisenach, perito economista.

Celebrada la vista evidenciaria, el 29 de julio de 2013 la Junta Reglamentadora emitió una *Resolución y Orden*

*Interlocutoria* mediante la cual acogió el *Informe sobre Certificación de Reclamación de Clase* presentado por el Oficial Examinador que presidió la mencionada vista y, en consecuencia, certificó la querella como una de clase.[3] Dicha *Resolución y Orden* fue notificada a todas las partes con interés en el litigio.

Posteriormente, el 17 de diciembre de 2013 la Junta Reglamentadora, según solicitado por los *Consumidores de Servicios de Telefonía*, ordenó el traslado del caso de autos al Tribunal de Primera Instancia. Lo anterior, de conformidad con la Ley Núm. 118-2013, Leyes de Puerto Rico (Parte 2) 1212, que confirió al foro primario la jurisdicción primaria y exclusiva para dilucidar aquellos pleitos de clase incoados por los consumidores de servicios de telecomunicaciones.

Así las cosas, y luego de varios trámites procesales ante el Tribunal de Primera Instancia, el 17 de junio de 2016 los *Consumidores de Servicios de Telefonía* le cursaron a la PRTC un *Primer pliego de interrogatorios y requerimiento de producción de documentos*. Ante ello, el 18 de julio de 2016 la PRTC solicitó al foro primario una prórroga de cuarenta y cinco (45) días para producir u objetar los documentos requeridos.

---

[3] Inconforme con la determinación de la Junta Reglamentadora sobre la certificación de la clase, la PRTC recurrió ante el Tribunal de Apelaciones. No obstante, el 8 de octubre de 2013 el foro apelativo intermedio notificó una *Sentencia* mediante la cual desestimó el recurso por falta de jurisdicción.

Aún en desacuerdo, la PRTC recurrió, por primera vez en el presente litigio, ante este Tribunal mediante recurso de *certiorari*. Sin embargo, el 28 de febrero de 2014 notificamos una *Resolución* mediante la cual rehusamos ejercer nuestra facultad revisora y denegamos la expedición del auto de *certiorari*.

Oportunamente, los *Consumidores de Servicios de Telefonía* se opusieron a la solicitud de prórroga presentada por la PRTC. A juicio de estos, era irrazonable dejar en suspenso el referido descubrimiento de prueba, pues se trataba de la producción de ciertos documentos que les habían sido requeridos a la PRTC desde el año 2011 y que, además, la Junta Reglamentadora les había ordenado preservar mediante la *Resolución y Orden* notificada el 18 de marzo de 2011.

Más adelante, el 14 de septiembre de 2018 para ser exactos, el Tribunal de Primera Instancia celebró la conferencia sobre el estado de los procedimientos. Allí, los *Consumidores de Servicios de Telefonía* informaron sobre el reiterado y total incumplimiento de la PRTC en producir -- transcurridos más de dos (2) años -- los documentos solicitados. Ante ello, el foro primario le concedió a la PRTC un término de treinta (30) días para descubrir la prueba requerida, en específico, aquella que la Junta Reglamentadora le había ordenado preservar.

No habiendo cumplido la PRTC con lo ordenado, el 18 de diciembre de 2018 los *Consumidores de Servicios de Telefonía* presentaron una *Moción para que se elimin[aran] las alegaciones de la parte demandada*. En su escrito, señalaron que la PRTC no había cumplido con su obligación de producir los documentos solicitados -- desde hace más de dos (2) años -- a pesar de que el Tribunal de Primera Instancia les había concedido dos (2) prórrogas a esos fines. En esa línea,

insistieron en que dicho proceder era una patente obstaculización al descubrimiento de prueba.

En esa misma fecha, entiéndase el 18 de diciembre de 2018, los *Consumidores de Servicios de Telefonía* presentaron ante el foro primario una *Solicitud de sentencia sumaria*. En ella, propusieron la existencia de quince (15) hechos incontrovertidos, los cuales reflejaban que durante los años 1999 al 2009 la PRTC les facturó y cobró de manera ilegal y fraudulenta -- al violar el principio de buena fe contractual -- la suma de $168,354,553.65 por concepto de renta, mantenimiento y reemplazo de equipo. Particularmente, adujeron que, de la prueba testifical y documental, -- que acompañaba la solicitud --, se desprendía que, durante el referido periodo, la PRTC no proveyó servicio alguno de reparación, mantenimiento o renta de equipo según facturado a los *Consumidores de Servicios de Telefonía*.[4]

Enterada de lo anterior, la PRTC se opuso a la solicitud de sentencia sumaria presentada por los *Consumidores de Servicios de Telefonía*. Así, la PRTC -- **sin aludir a hecho o**

---

[4] **En específico, surge que los *Consumidores de Servicios de Telefonía* sustentaron los hechos esenciales y pertinentes sobre los cuales no existía controversia mediante la siguiente evidencia: 1) *Informe sobre certificación de reclamación de clase*; 2) Informe preparado por el Sr. Jeffrey Eisenach, perito de la PRTC; 3) Transcripción del testimonio del Sr. Jeffrey Eisenach durante la vista evidenciaria celebrada ante la JRT; 4) *Contestación a "Segunda querella de clase enmendada"* presentada por la PRTC; 5) *Segunda querella de la clase enmendada*; 6) *Contestaciones y/u objeciones a "Requerimiento de admisiones e interrogatorio especial"* presentado por la PRTC; 7) Declaración Jurada del señor Pérez Ducy; 8) Transcripción del testimonio del señor Pérez Ducy durante la vista evidenciaria celebrada ante la JRT; 9) Transcripción del testimonio del señor José M. Baraletta Rodríguez durante la vista evidenciaria celebrada ante la JRT; 10) Transcripción del testimonio vertido por el señor Ismael Torres Otero durante la vista evidenciaria celebrada ante la JRT; 11) Transcripción del testimonio vertido por el señor Howard Ferrer durante la vista evidenciaria celebrada ante la JRT, y 12) *Resolución* emitida por el Tribunal de Primera Instancia el 25 de mayo de 2016.**

**prueba alguna que impidiese la resolución sumaria del presente litigio, como lo requiere nuestro ordenamiento procesal civil** -- esgrimió, sin más, que la prueba en la que se sustentaba la solicitud era insuficiente toda vez que se presentó prematuramente por no haber culminado el proceso de descubrimiento de prueba el cual inicialmente se limitó a la controversia sobre la certificación de la clase. En ese sentido, solicitó al Tribunal de Primera Instancia concluir el descubrimiento de prueba previo a disponer en sus méritos de la moción de sentencia sumaria.

Evaluados los escritos de ambas partes, y celebrada una vista evidenciaria a esos fines, el 4 de junio de 2019 el foro primario notificó una *Sentencia Sumaria Parcial* mediante la cual declaró con lugar la solicitud de sentencia sumaria presentada por los *Consumidores de Servicios de Telefonía*. En síntesis, el Tribunal de Primera Instancia consignó que no existía controversia sobre que la PRTC, entre los años 1999 al 2009, dolosamente y en contravención al principio de buena fe contractual, les facturó y cobró a los *Consumidores de Servicios de Telefonía* un cargo por servicios de reparación, mantenimiento o renta de equipo a sabiendas de su ilegalidad e improcedencia por no proveer dichos servicios.

**En específico, el foro primario destacó que la oposición a la solicitud de sentencia sumaria presentada por la PRTC no cumplió con lo establecido en la Regla 36 de Procedimiento Civil, *infra*. En ese sentido, dispuso que la PRTC no presentó**

**prueba alguna que controvirtiera la evidencia presentada por los *Consumidores de Servicios de Telefonía*.** Además, el Tribunal de Primera Instancia rechazó la petición de la PRTC de posponer la resolución sumaria del pleito hasta que finalizara el descubrimiento de prueba.

Al respecto, el foro primario resaltó que, a pesar de que el pleito fue bifurcado, los *Consumidores de Servicios de Telefonía* sustentaron su solicitud de sentencia sumaria mediante prueba documental y testifical provista, en su mayoría, por la propia PRTC durante los años 2011 al 2013 cuando se autorizó el descubrimiento de prueba para la certificación de la clase. En virtud de ello, determinó que resultaba irrazonable e improcedente continuar postergando la resolución del caso de autos y, con ello, perpetuar el incumplimiento de la PRTC en detrimento de miles de consumidores y consumidoras. Así pues, condenó a la PRTC al pago de $168,354,553.65 en beneficio de los *Consumidores de Servicios de Telefonía*.[5]

En desacuerdo, la PRTC le solicitó al Tribunal de Primera Instancia la reconsideración de su dictamen. Dicha solicitud fue denegada mediante una *Resolución* notificada el 22 de octubre de 2019.

Inconforme con el proceder del foro primario, la PRTC acudió al Tribunal de Apelaciones mediante recurso de

---

[5] No obstante, el foro primario dejó por resolver los siguientes asuntos: 1) identificar de forma individual a los miembros de la clase; 2) emitir la correspondiente notificación a los miembros de la clase, y 3) determinar la compensación a la cual tienen derecho los miembros de la clase.

apelación. Allí, argumentó que el Tribunal de Primera Instancia había errado al dictar sentencia sumaria parcial de manera prematura, es decir, alegadamente previo a concluir el descubrimiento de prueba.

Asimismo, adujo que dicho foro había incidido al fundamentar su dictamen en evidencia inadmisible e insuficiente. En particular, al considerar la declaración jurada del señor Pérez Ducy por constituir prueba de referencia. Oportunamente, los *Consumidores de Servicios de Telefonía* se opusieron al recurso presentado por la PRTC.

Tras analizar los alegatos de ambas partes, el foro apelativo intermedio dictó una *Sentencia* mediante la cual confirmó el dictamen emitido por el foro primario. Al así hacerlo, resolvió que la determinación del Tribunal de Primera Instancia estuvo apoyada en amplia prueba documental y testifical, y no únicamente en la declaración jurada del señor Pérez Ducy. Sobre esta última, el Tribunal de Apelaciones descartó la contención de la PRTC de que dicha declaración jurada constituía prueba de referencia inadmisible, pues la misma fue suscrita previo a la vista evidenciaria celebrada ante la Junta Reglamentadora en el año 2013 donde, además, la PRTC tuvo la oportunidad de contrainterrogar al señor Pérez Ducy.

**De forma similar, el foro apelativo intermedio advirtió que la PRTC, en su oposición a la solicitud de sentencia sumaria, no incluyó una relación concisa, mediante párrafos enumerados, de los hechos esenciales que estaban en**

**controversia, ni hizo referencia a prueba alguna en apoyo de ello según requerido por la Regla 36 de Procedimiento Civil, *infra*.** Así pues, y ante la inexistencia de controversias de hechos materiales que evitaran la disposición del caso, el Tribunal de Apelaciones concluyó que la prueba presentada por los *Consumidores de Servicios de Telefonía* demostró que la PRTC incumplió con el contrato de servicios de telefonía.

En desacuerdo con lo sentenciado por el foro apelativo intermedio, la PRTC presentó una *Moción de Reconsideración* ante dicho foro. Tal solicitud fue declarada no ha lugar.

Insatisfecho con el proceder de los foros *a quo*, el 4 de marzo de 2021 la PRTC recurrió ante este Tribunal mediante el presente recurso de *certiorari*. En resumen, insiste en que los foros recurridos erraron al denegar su petición para culminar el descubrimiento de prueba en violación a su derecho a un debido proceso de ley y al apoyar sus dictámenes en evidencia insuficiente e inadmisible.

Evaluada dicha petición, el 23 de abril de 2021 una Sala Especial de Despacho de esta Curia denegó expedir el auto de *certiorari* solicitado.[6] Posteriormente, y en una primera reconsideración, otra Sala de Despacho de este Tribunal

---

[6] La votación fue la siguiente: la Jueza Presidenta Oronoz Rodríguez y los Jueces Asociados señores Kolthoff Caraballo y Estrella Martínez denegaron la expedición del auto. La Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Rivera García hubiesen expedido el mismo.

denegó reconsiderar su dictamen.[7] No fue hasta la segunda reconsideración que se decide expedir el caso de marras.[8]

Oportunamente, tanto la PRTC como los *Consumidores de Servicios de Telefonía*, presentaron sus correspondientes escritos. En éstos, esbozaron argumentos similares a los expuestos anteriormente.

Trabada así la controversia, y con el beneficio de la comparecencia de ambas partes en el presente litigio, una mayoría de esta Curia -- **sin considerar el tiempo transcurrido, todas las oportunidades que se le dieron para ello y el craso incumplimiento de la PRTC con el ordenamiento procesal civil vigente** -- resuelve que, contrario a lo sentenciado por los foros *a quo*, correspondía que se permitiera realizar un descubrimiento de prueba completo y adecuado sobre los méritos de la controversia según fue solicitado por la mencionada empresa de telecomunicaciones, por lo que no procedía adjudicar el caso de autos de forma sumaria. Lo anterior, al ultimar que la declaración jurada y el testimonio del señor Pérez Ducy, fue la única prueba en la que presuntamente el foro primario fundamentó su determinación, siendo ello insuficiente para concluir que la

---

[7] La votación fue la siguiente: los Jueces Asociados señores Kolthoff Caraballo, Feliberti Cintrón y Colón Pérez proveyeron no ha lugar a la moción de reconsideración. El Juez Asociado señor Martínez Torres se inhibió.

[8] La votación fue la siguiente: la Jueza Asociada señora Pabón Charneco y los Jueces Asociados señores Kolthoff Caraballo, Rivera García y Feliberti Cintrón expedirían en reconsideración. La Jueza Presidenta Oronoz Rodríguez y los Jueces Asociados señores Estrella Martínez y Colón Pérez hubiesen provisto no ha lugar a la segunda solicitud de reconsideración presentada en el caso de epígrafe. El Juez Asociado señor Martínez Torres se inhibió.

PRTC incumplió dolosamente con sus obligaciones contractuales. Nada más lejos de la verdad. Es por ello que disentimos. Nos explicamos.

## II.

## A.

Como es sabido, la moción de sentencia sumaria es un mecanismo procesal discrecional cuyo propósito principal es la solución justa, rápida y económica de los litigios civiles en los cuales resulta innecesario celebrar un juicio plenario. *SLG Fernández-Bernal v. RAD-MAN San Juan*, 2021 TSPR 149, 208 DPR ___ (2021); *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 676 (2018); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015). Ello, pues se trata de pleitos que no presentan controversias genuinas de hechos materiales y lo único que resta es dirimir una controversia de derecho. *Íd.*

En nuestro ordenamiento jurídico, es la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V., R. 36, la que regula todo lo concerniente a la moción de sentencia sumaria. En particular, la Regla 36.1 del referido cuerpo legal, 32 LPRA Ap. V, R. 36.1, dispone que la parte demandante puede presentar una moción de sentencia sumaria veinte (20) días después de la fecha del emplazamiento del demandado siempre y cuando la misma esté fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una

controversia sustancial de hechos esenciales y pertinentes.[9] *SLG Fernández-Bernal v. RAD-MAN San Juan*, *supra*; *Bobé et al. v. UBS Financial Services*, 198 DPR 6, 20 (2017); *Oriental Bank v. Perapi et al.*, 192 DPR 7, 25 (2014). Véase, además, R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, Lexis Nexis, 2017, págs. 315-316. Así pues, en lo que respecta a los hechos relevantes sobre los cuales se plantea la inexistencia de una controversia sustancial, este Tribunal ha sentenciado que la parte promovente "está obligada a desglosarlos en párrafos debidamente numerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya". *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013). Véase, además, Regla 36.3(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(a); *Roldán Flores v. M. Cuebas et al.*, *supra*, pág. 676; *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 111.

**Por otro lado, sabido es que la parte que se opone a una solicitud de sentencia sumaria tiene el deber de refutar**

---

[9] Sobre la suficiencia de las declaraciones juradas para sostener u oponerse a una solicitud de sentencia sumaria, la Regla 36.5 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.5, establece, en lo pertinente, que éstas "se basarán en el conocimiento personal del (de la) declarante. Contendrán aquellos hechos que serían admisibles en evidencia y demostrarán afirmativamente que el (la) declarante está cualificado(a) para testificar en cuanto a su contenido".

Al respecto, esta Curia ha sentenciado que, para que una declaración jurada sea suficiente para sostener o controvertir una moción de sentencia sumaria y para que un tribunal pueda considerarla y atribuirle valor probatorio, ésta tiene que contener hechos específicos sobre los aspectos sustantivos del caso y, además, debe incluir hechos que establezcan que el declarante tiene conocimiento personal del asunto declarado. *Roldán Flores v. M. Cuebas et al.*, *supra*, págs. 677-679; *Ramos Pérez v. Univisión*, 178 DPR 200, 216 (2010); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 722 (1986).

**los hechos alegados con prueba que controvierta la exposición de la parte que solicita la sentencia sumaria.** *SLG Fernández-Bernal v. RAD-MAN San Juan, supra; Roldán Flores v. M. Cuebas et al., supra,* págs. 676-677; *López v. Miranda,* 166 DPR 546, 563 (2005).* **A esos efectos, la Regla 36.3(b) de Procedimiento Civil, 32 LPRA Ap. V., R. 36.3(b), preceptúa que la parte que se opone a que se dicte sentencia sumariamente debe presentar una relación concisa y organizada de aquellos hechos esenciales y pertinentes que, a su juicio, están en controversia y para cada uno detallar la evidencia admisible que sostiene su impugnación.** *SLG Fernández-Bernal v. RAD-MAN San Juan, supra; Roldán Flores v. M. Cuebas et al., supra; Bobé et al. v. UBS Financial Services, supra,* pág. 21. **En otras palabras, debe controvertir la prueba presentada con evidencia sustancial y no puede descansar en meras alegaciones.** *Íd.* Véase, también, J. A. Cuevas Segarra, *Tratado de derecho procesal civil,* San Juan, Pubs. JTS, 2011, T. I, pág. 1041.

Ahora bien, es norma reiterada que el hecho de que la parte promovida no presente prueba que controvierta la evidencia presentada por la parte promovente en la moción de sentencia sumaria no conlleva su concesión automática si efectivamente existe una controversia sustancial sobre hechos esenciales y materiales. *SLG Fernández-Bernal v. RAD-MAN San Juan, supra; Mun. de Añasco v. ASES et al.,* 188 DPR 307, 327 (2013); *Ramos Pérez v. Univisión,* 178 DPR 200, 215 (2010). Así pues, un tribunal no podrá dictar sentencia

sumariamente cuando: "(1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho, no proceda". *SLG Fernández-Bernal v. RAD-MAN San Juan*, *supra*. Véase, también, *Pepsi-Cola v. Mun. Cidra et al.*, 186 DPR 713, 757 (2012); *S.L.G. Szendrey-Ramos v. Consejo Titulares*, 184 DPR 133, 167 (2011).

**A *contrario sensu*, un tribunal podrá dictar sentencia sumaria si, al analizar los documentos que acompañan la solicitud de sentencia sumaria y aquellos incluidos con la moción en oposición, así como los que obren en el expediente, queda claramente convencido de que no existe una controversia real sustancial en cuanto a ningún hecho material y que, como cuestión de derecho, procede la misma a favor de la parte promovente.** Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. Véase, además, *SLG Fernández-Bernal v. RAD-MAN San Juan*, *supra*; *Meléndez González et al. v. M. Cuebas*, *supra*.

### B.

Establecido lo anterior, y en cuanto al tema bajo estudio, pero ya más relacionado a las controversias que nos ocupan, conviene señalar aquí que las Reglas de Procedimiento Civil, *supra*, contemplan el tratamiento que se le debe dar a aquellas situaciones que la parte promovida por una moción de sentencia sumaria no ha podido realizar un adecuado

descubrimiento de prueba, es decir, no ha tenido la oportunidad de conseguir prueba para apoyar alguno de los hechos esenciales que justifican su oposición. *Ramos Pérez v. Univisión, supra, págs. 216-217*; *García Rivera et al. v. Enríquez*, 153 DPR 323, 339 (2001); *Pérez v. El Vocero de P.R.*, 149 DPR 427, 449 (1999). **En esos escenarios, la Regla 36.6 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.6, permite al foro primario, en el ejercicio de su discreción, posponer o denegar una solicitud de sentencia sumaria por presuntamente haber sido presentada prematuramente. Ahora bien, este Tribunal ha sentenciado que "el Tribunal de Primera Instancia debe[rá] tomar aquellas medidas que garanticen que no se recurra a la Regla 36.6, *supra*, como un ardid para demorar la solución final del asunto. Razón por la cual, es necesario que las razones que aduzca la promovida en apoyo a su contención sean razonables y adecuadas".** (Énfasis nuestro). *García Rivera et al. v. Enríquez*, *supra*, pág. 340.

C.

Por último, y en lo también relacionado al mecanismo de sentencia sumaria, es menester mencionar que, al revisar la procedencia de una sentencia sumaria, los foros apelativos nos encontramos en la misma posición que el Tribunal de Primera Instancia. *SLG Fernández-Bernal v. RAD-MAN San Juan*, *supra*; *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1025 (2020); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). A esos efectos, al evaluar una sentencia

sumaria dictada por el foro primario, nos corresponde revisar el expediente de novo y verificar que las partes hayan cumplido con las exigencias de la Regla 36.3, *supra*, es decir, con los requisitos de forma. *Íd*. Así pues, "[d]e encontrar que los hechos materiales realmente están incontrovertidos, nos corresponde entonces revisar de novo si el [Tribunal de Primera Instancia] aplicó correctamente el Derecho". *SLG Fernández-Bernal v. RAD-MAN San Juan*, *supra*. Véase, además, *González Santiago v. Baxter Healthcare*, *supra*; *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 118.

III.

De otra parte, y por resultar en extremo pertinente para la correcta disposición de los asuntos ante nuestra consideración, precisa recordar que, en ausencia de pasión, perjuicio, parcialidad o error manifiesto, los tribunales apelativos no debemos intervenir con aquellas determinaciones que un tribunal inferior haga en el sano ejercicio de su discreción. *SLG Fernández-Bernal v. RAD-MAN San Juan*, *supra; Citibank et al. v. ACBI et al.*, 200 DPR 724, 733 (2018); *Rodríguez v. Urban Brands*, 167 DPR 509, 522 (2006). Lo anterior responde a que los foros primarios gozan de amplio margen de discreción para llevar a cabo los procedimientos que presiden, entiéndase, para decidir de una u otra forma o escoger entre uno o varios cursos de acción. *Íd*. Véase, además, *García v. Padró*, 165 DPR 324, 334-335 (2005); *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990); *Pueblo v. Sánchez González*, 90 DPR 197, 200 (1964).

Consecuentemente, los tribunales apelativos -- salvo contadas excepciones -- no intervendrán con la forma en que el Tribunal de Primera Instancia maneja sus casos. *SLG Fernández-Bernal v. RAD-MAN San Juan*, *supra*; *Citibank et al. v. ACBI et al.*, *supra*; *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 933 (2015).

Es, pues, a la luz de la normativa antes expuesta, y no de otra, que procedía disponer de la causa de epígrafe. Como una mayoría de este Tribunal no lo hizo, -- desde la disidencia -- procedemos a así hacerlo.

IV.

Como mencionamos anteriormente, en el presente caso, la PRTC, en esencia, señala que los foros *a quo* incidieron al declarar con lugar la solicitud de sentencia sumaria presentada por los *Consumidores de Servicios de Telefonía* sin alegadamente culminar el descubrimiento de prueba relacionado a este caso. No le asiste la razón.

Para llegar a la anterior conclusión, basta con señalar que la solicitud de sentencia sumaria presentada por los *Consumidores de Servicios de Telefonía*, a todas luces, cumplió con los requisitos de forma establecidos en las Reglas de Procedimiento Civil, *supra*. En particular, expusieron quince (15) hechos como incontrovertidos los cuales sustentaron con amplia prueba documental y testifical, y establecieron la inexistencia de hechos materiales que

impedían dictar sentencia sumaria. A la luz de los hechos y el derecho expuesto, concluyeron que durante los años 1999 al 2009 la PRTC les cobró la suma de $168,354,553.65 por concepto de renta, mantenimiento y reemplazo de equipo de manera ilegal y fraudulenta al no proveer dichos servicios, por lo que incumplió dolosamente con sus obligaciones contractuales.

**A raíz de ello, correspondía a la PRTC el deber de refutar los hechos alegados con prueba que controvirtiera la exposición de los *Consumidores de Servicios de Telefonía*. No obstante, la PRTC no cumplió con esa carga procesal.**

Según indicamos anteriormente, la referida empresa de telecomunicaciones, en su oposición a la solicitud de sentencia sumaria presentada en su contra, se limitó a señalar que ésta fue presentada de manera prematura, al presuntamente no haber concluido el descubrimiento de prueba. Tales alegaciones, además de no ser ciertas, no cumplen con lo dispuesto en la Regla 36.3 de Procedimiento Civil, *supra*.

Y es que, la amplia prueba documental y testifical presentada por los *Consumidores de Servicios de Telefonía*, -- recopilada a través de los ya más de diez (10) años de litigio y provista, en su mayoría, por la propia PRTC --, demostró de forma inequívoca que no existía controversia en cuanto a que la PRTC incumplió dolosamente con sus obligaciones contractuales al facturarle a los *Consumidores*

*de Servicios de Telefonía* por un servicio que no prestaba.[10] Correspondía a la PRTC presentar prueba en contrario, y no lo hizo.

Sin embargo, lejos de lo antes reseñado, y en lo que consideramos un lamentable proceder, una mayoría de esta Curia, -- en abstracción del principio firmemente establecido de que los tribunales apelativos debemos evitar revocar sentencias emitidas sumariamente por el Tribunal de Primera Instancia frente a argumentos escuetos --, revoca la

---

[10] Ello claramente se desprende de una lectura desapasionada del: 1) *Informe sobre certificación de reclamación de clase*; 2) Informe preparado por el Sr. Jeffrey Eisenach, perito de la PRTC; 3) Transcripción del testimonio del Sr. Jeffrey Eisenach durante la vista evidenciaria celebrada ante la JRT; 4) *Contestación a "Segunda querella de clase enmendada"* presentada por la PRTC; 5) *Segunda querella de la clase enmendada*; 6) *Contestaciones y/u objeciones a "Requerimiento de admisiones e interrogatorio especial"* presentado por la PRTC; 7) Declaración Jurada del señor Pérez Ducy; 8) Transcripción del testimonio del señor Pérez Ducy durante la vista evidenciaria celebrada ante la JRT; 9) Transcripción del testimonio del señor José M. Baraletta Rodríguez durante la vista evidenciaria celebrada ante la JRT; 10) Transcripción del testimonio vertido por el señor Ismael Torres Otero durante la vista evidenciaria celebrada ante la JRT; 11) Transcripción del testimonio vertido por el señor Howard Ferrer durante la vista evidenciaria celebrada ante la JRT, y 12) *Resolución* emitida por el Tribunal de Primera Instancia el 25 de mayo de 2016.

Todos estos documentos y testimonios dejaron meridianamente claro que, en efecto, la PRTC, durante los años 1999 al 2009, les cobró a los *Consumidores de Servicios de Telefonía* un cargo mensual por concepto de renta, mantenimiento y reemplazo de equipo de telecomunicaciones a sabiendas de su ilegalidad por no proveer dichos servicios. En consecuencia, la PRTC violó el principio de buena fe e incurrió en incumplimiento contractual doloso al cobrar fraudulentamente, según probado ante el Tribunal de Primera Instancia, la suma de $168,343,553.65 durante el referido periodo de tiempo.

En cuanto a lo relacionado a la declaración jurada presentada por el señor Pérez Ducy, similar a como lo determinó el foro primario, y confirmado por el Tribunal de Apelaciones, debemos señalar que ésta no constituye prueba de referencia, pues la misma fue prestada por una persona que tenía conocimiento personal de los hechos sobre los cuales declaró por haber laborado en la PRTC durante varios de los años aquí en controversia como Vicepresidente de Ventas y Mercadeo. Además, la misma formó parte de la querella presentada por los *Consumidores de Servicios de Telefonía* e iba dirigida a atender los méritos de las controversias. Y lo que es más, la PRTC tuvo la oportunidad de contrainterrogar al señor Pérez Ducy sobre lo allí declarado en la vista celebrada ante la Junta Reglamentadora.

sentencia sumaria dictada a favor de los *Consumidores de Servicios de Telefonía* y determina que era necesario culminar el descubrimiento de prueba solicitado por la PRTC. Ello, al sugerir que esta última -- durante más de diez (10) años -- no tuvo una oportunidad razonable para efectuar un descubrimiento de prueba adecuado sobre los méritos de la reclamación.

Al así proceder, una mayoría de mis compañeros y compañera de estrado avalan los reiterados intentos de la PRTC de obstaculizar -- por años -- la resolución del presente litigio, omite lo dispuesto en nuestro ordenamiento procesal civil en materia de sentencia sumaria y pasa por alto nuestro rol revisor como tribunal de última instancia. Lo que es peor, lo resuelto en la *Sentencia* que hoy emite este Tribunal coloca nuevamente en un estado de incertidumbre a los miles de *Consumidores de Servicios de Telefonía* que, conforme a derecho, habían prevalecido en su reclamo.

De ello, enérgicamente disentimos. Como ha quedado claramente demostrado, no se cometieron aquí los errores señalados por la PRTC.

V.

En fin, y a modo de epílogo, no cabe duda que el escenario de pasión, perjuicio, parcialidad o error manifiesto que hubiese podido motivar la intervención de este Tribunal con la determinación del foro primario nunca estuvo presente en el caso de marras. Aquí lo que existe es un mero capricho de reabrir un pleito, instado hace más de diez (10)

años, sin razón alguna en derecho que justifique dicho proceder.

## VI.

Es, pues, por los fundamentos antes expuestos que respetuosamente disentimos.


Ángel Colón Pérez
Juez Asociado